# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

DAVID CAJIUAT,

    Plaintiff,

    v.

KLX ENERGY SERVICES HOLDINGS, INC., JOHN T. COLLINS, AMIN J. KHOURY, THOMAS P. MCCAFFREY, RICHARD G. HAMERMESH, BENJAMIN A. HARDESTY, STEPHEN M. WARD, JR., THEODORE L. WEISE, and JOHN T. WHATES,

    Defendants.

---

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

---

Plaintiff David Cajiuat ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is an action against KLX Energy Services Holdings, Inc. ("KLXE" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger between KLXE and Quintana Energy Services Inc. ("Quintana" or "QES") (the "Proposed Transaction").

1

2. On June 18, 2020, Defendants caused to be filed with the SEC Amendment No. 1 to a Form S-4 Registration Statement (the "Registration Statement") in connection with the Proposed Transaction.

3. The Registration Statement, which recommends that KLXE stockholders vote in favor of, among other things, the issuance of KLXE common stock to QES stockholders in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (1) KLXE's and Quintana's financial projections; (2) the financial analyses performed by KLXE's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs), in connection with its fairness opinion; and (3) the sales process leading up to the Proposed Transaction.[1]

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the anticipated shareholder vote on the Proposed Transaction.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

---

[1] The Registration Statement states that the Proposed Transaction "is subject to customary closing conditions, including (i) the adoption of the Merger Agreement by [Quintana's] stockholders and approval of the issuance of KLXE Common Stock in connection with the Merger . . . by KLXE's stockholders." Further, the Registration Statement provides that the Stock Issuance vote is required because "the issuance of the shares of KLXE Common Stock in the merger is expected to exceed [20% of the number of shares of common stock outstanding before the issuance of the stock, or 20% of the voting power outstanding before the issuance of stock]."

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of KLXE's common stock.

10. Defendant KLXE provides completion, intervention, and production services and products to the onshore oil and gas producing regions of the United States. The Company is incorporated in Delaware and has operations in Colorado. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "KLXE."

11. Defendant John T. Collins ("Collins") is the Chairman of the Board of the Company.

12. Defendant Amin J. Khoury ("Khoury") is a director of the Company.

13. Defendant Thomas P. McCaffrey ("McCaffrey") is President, Chief Executive Officer, Chief Financial Officer, and a director of the Company.

14. Defendant Richard G. Hamermesh ("Hamermesh") is a director of the Company.

15. Defendant Benjamin A. Hardesty ("Hardesty") is a director of the Company.

16. Defendant Stephen M. Ward, Jr. ("Ward") is a director of the Company.

17.     Defendant Theodore L. Weise ("Weise") is a director of the Company.

18.     Defendant John T. Whates ("Whates") is a director of the Company.

19.     Defendants Collins, Khoury, McCaffrey, Hamermesh, Hardesty, Ward, Weise, and Whates are collectively referred to herein as the "Individual Defendants."

20.     Defendants KLXE and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

21.     Quintana provides oilfield services to onshore oil and natural gas exploration and production companies operating in conventional and unconventional plays in the United States. Quintana is incorporated in Delaware with principal executive offices located in Houston, Texas. Quintana's common stock trades on the New York Stock Exchange under the ticker symbol, "QES."

## SUBSTANTIVE ALLEGATIONS

**A.  The Proposed Transaction**

22.     On May 3, 2020, KLXE and Quintana announced that they had entered into a definitive agreement whereby the companies would combine in an all-stock merger transaction. Under the terms of the agreement, Quintana shareholders would receive 0.4844 shares of KLXE common stock for each share of Quintana common stock. According to the press release, upon closing, KLXE and Quintana shareholders would each own, respectively, approximately 59% and 41% of the equity of the combined company on a fully diluted basis. Further, the combined company would retain KLX Energy Services as its corporate name, the listing would remain on NASDAQ under the ticker "KLXE," and the corporate headquarters would be moved to Houston, Texas. The press release states, in pertinent part:

**KLX Energy Services and Quintana Energy Services to Combine in an All-Stock Merger, Establishing an Industry-Leading Provider of Asset-Light Oilfield Solutions Across the Full Well Lifecycle Including Drilling, Completion and Production Related Products and Services**

May 03, 2020 23:47 ET | **Source:** KLX Energy Services LLC

**Transaction Highlights**

- Highly complementary product and service offerings across all major US oil and gas basins provide for increased scale to serve a blue-chip customer base
- Accretive to free cash flow per share within 12 months of closing
- Significant annualized cost synergies of at least $40 million, achievable within twelve months
- Joins two strong company cultures comprised of highly-talented teams with shared commitments to safety, performance, customer service and profitability
- Combined company to retain the KLXE name and ticker while the corporate headquarters will move to Houston, TX
- QES executive team, including President and CEO Chris Baker along with EVP and CFO Keefer Lehner will remain in those roles with the combined company
- Nine member Board of Directors, comprising five from the KLXE Board, including John Collins as Chairman, and four from the QES Board
- Enhances combined company's ability to effect further industry consolidation

WELLINGTON, Fla. and HOUSTON, May 03, 2020 (GLOBE NEWSWIRE) -- KLX Energy Services Holdings, Inc. ("KLXE") (NASDAQ: KLXE) and Quintana Energy Services, Inc. ("QES") (NYSE: QES) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger transaction. The combined company will have an industry-leading, asset-light product and service offering present in all major US onshore oil and gas basins, with more than $1 billion of pro forma fiscal year 2019 revenue and approximately $106 million in fiscal year 2019 adjusted EBITDA, excluding an estimated $40 million of annualized cost synergies and a strong liquidity profile with approximately $118 million of cash[1] and a $100 million revolving credit facility.

Under the terms of the Merger Agreement, which has been unanimously approved by the Boards of Directors of both companies, QES shareholders will receive 0.4844 shares of KLXE common stock for each share of QES common stock (the "Exchange Ratio"). Upon closing, KLXE and QES shareholders will, respectively, own approximately 59% and 41% of the equity of the combined company on a fully diluted basis. The combined company will retain the KLX Energy Services corporate name, the listing will remain on Nasdaq under the ticker "KLXE" and the corporate headquarters will be moved to Houston, Texas.

5

\*   \*   \*

**Leadership, Governance and Headquarters**

Both KLXE and QES contribute highly experienced management teams with a significant track record of success. Chris Baker, President and CEO of QES, will be President and CEO. Tom McCaffrey, President and CEO of KLXE, will be a member of the Board of Directors of the combined company and will be Chairman the Integration Committee of the Board. Keefer Lehner, EVP and Chief Financial Officer of QES, will be EVP and Chief Financial Officer.

Upon closing of the transaction, the combined company's Board of Directors will consist of nine directors, five of whom will be from the legacy KLXE Board, including John Collins as Chairman, and four of whom will be from the legacy QES Board.

The combined company's corporate headquarters will be moved to Houston, Texas.

**Approvals and Closing**

The transaction has been unanimously approved by the Boards of Directors of both KLXE and QES. The merger is expected to close in the second half of 2020, following KLXE and QES shareholder approval and satisfaction of other customary closing conditions.

Archer Well Company Inc., Quintana Capital Group, L.P., Geveran Investments Limited and Robertson QES Investment LLC own approximately 75 percent of the outstanding shares of QES and have entered into a voting and support agreement to vote their shares in favor of the transaction.

**Advisors**

Goldman Sachs & Co. LLC served as exclusive financial advisor to KLXE and Freshfields Bruckhaus Deringer US LLP served as legal counsel.

Tudor, Pickering, Holt & Co. served as exclusive financial advisor to QES and Skadden, Arps, Slate, Meagher, & Flom LLP served as legal counsel.

\*   \*   \*

**About KLX Energy Services**

KLX Energy Services is a leading US onshore provider of mission critical oilfield services focused on completion, intervention and production activities for the most technically demanding wells. KLX Energy Services' experienced and technically skilled personnel are supported by a broad portfolio of specialized tools and

equipment, including innovative proprietary tools developed by KLXE's in-house R&D team. KLX Energy Services supports its customers on a 24/7 basis from over 35 service facilities located in the major onshore oil and gas producing regions of the United States. More information is available at **www.klxenergy.com**.

**About Quintana Energy Services**

QES is a provider of diversified oilfield services to leading onshore oil and natural gas exploration and production companies operating in both conventional and unconventional plays in all of the active major basins throughout the US. QES's primary services include directional drilling, snubbing, coiled tubing, wireline services and pressure pumping. QES offers a complementary suite of products and services to a broad customer base that is supported by in-house manufacturing, repair and maintenance capabilities. More information is available at **www.quintanaenergyservices.com**.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.  The Registration Statement omits and/or misrepresents material information concerning: (1) KLXE's and Quintana's financial projections; (2) the financial analyses performed by Goldman Sachs in connection with its fairness opinion; and (3) the sales process leading up to the Proposed Transaction.

24.  The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the KLXE Board and Reasons for the Merger; (iii) Opinion of KLXE's Financial Advisor; and (iv) Certain Unaudited Prospective Financial and Operating Information.

25.  Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, KLXE shareholders will be forced to make a voting decision on the Proposed Transaction and/or Stock Issuance without full disclosure of all material information.

26.  Among other reasons, and as described more fully below, this information is

material in light of the Registration Statement's acknowledgment that, following the consummation of the Proposed Transaction, "KLXE stockholders . . . will [] have reduced ownership and voting interest in and will exercise less influence over management of KLXE following completion of the merger[.]"[2]

27. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning KLXE's and Quintana's Financial Projections

28. The Registration Statement omits material information concerning KLXE's and Quintana's financial projections.

29. The Registration Statement provides that KLXE management prepared two sets of financial forecasts regarding KLXE's anticipated future operations for fiscal years 2020 through 2023, including: (1) the KLXE Base Forecasts, which assumes a recovery from the decline in the demand for oil and gas and related services of the type KLXE provides during the third quarter of 2020; and (2) the KLXE 2021 Recovery Forecasts, which assumes a recovery from the decline in the demand for oil and gas and related services of the type KLXE provides in 2021.

30. The Registration Statement, however, fails to disclose the following concerning the KLXE Base Forecasts and KLXE 2021 Recovery Forecasts: (1) all line items used to calculate (i) Revenue(s); (ii) Adjusted EBITDA, (iii) Free Cash Flow, and (iv) Adjusted Operating Earnings/Loss; and (2) a reconciliation of all non-GAAP to GAAP metrics.

---

[2] According to the Registration Statement, "because KLXE will issue additional shares of KLXE Common Stock to [Quintana] stockholders in exchange for their shares of [Quintana] Common Stock, each share of KLXE Common Stock outstanding prior to the merger will (subject to the reverse stock split, if effectuated) represent a smaller percentage of the aggregate number of shares of KLXE outstanding after the merger."

31.     The Registration Statement provides that Quintana management prepared (1) financial forecasts regarding Quintana's anticipated future operations for fiscal years 2020 through 2023, including (i) the QES 2020 Recovery Case, (ii) the QES 2021 Recovery Case, and (iii) the QES Downside Sensitivity Case; and (2) forecasts for KLXE for fiscal years 2020 through 2023, which are referred to as the KLXE Downside Sensitivity Case (collectively, the "QES Forecasts").

32.     The Registration Statement, however, fails to disclose the following concerning the QES Forecasts: (1) all line items used to calculate (i) Revenue, (ii) Adjusted EBITDA, and (iii) Levered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

33.     The Registration Statement fails to adequately disclose the KLXE Pro Forma 2020 Recovery Forecasts and Tax Benefit Estimates, which were used by Goldman Sachs in performing its financial analyses.

34.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[3]

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

35.     The disclosure of the aforementioned projected financial information is material because it would provide KLXE shareholders with a basis to project the future financial performance of KLXE and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, KLXE's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and/or Stock Issuance in connection with the Proposed Transaction.

36.     Accordingly, in order to bring the Registration Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the aforementioned projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to KLXE shareholders.

### 2.   Material Omissions Concerning Goldman Sachs' Financial Analyses

38.     In connection with the Proposed Transaction, the Registration Statement omits

---

speech.html (footnotes omitted) (last visited Jun. 24, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

10

material information concerning analyses performed by Goldman Sachs.

39. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*" of KLXE: (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 12.0% to 15.0%, (ii) perpetuity growth rates ranging from 2.0% to 4.0%, and (iii) implied exit terminal year EBITDA multiples ranging from 3.1x to 5.0x; (2) the estimates of unlevered free cash flow for KLXE for the years 2020 to 2023 and all underlying line items thereto; (3) the range of illustrative terminal values for KLXE; (4) the estimated net present value of KLXE's future tax benefits; (5) the net debt of KLXE as of January 31, 2020; and (6) the number of fully diluted outstanding KLXE Common Stock.

40. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*" of Pro Forma KLXE: (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 12.0% to 15.0%, (ii) perpetuity growth rates ranging from 2.0% to 4.0%, and (iii) implied exit terminal year EBITDA multiples ranging from 3.6x to 5.8x; (2) the estimates of unlevered free cash flow for the combined company for the years 2020 to 2023 and all underlying line items thereto; (3) the Synergies utilized in the analysis; (4) the range of illustrative terminal values for the combined company; (5) the estimated net present value of KLXE's future tax benefits; (6) the net debt of the combined company as of January 31, 2020; and (7) the number of fully diluted outstanding shares of the pro forma KLXE Common Stock.

41. The Registration Statement provides that Goldman Sachs, in preparing its financial analyses, "compared certain financial and stock market information for KLXE and QES with similar information for certain other companies the securities of which are publicly traded[,]" yet fails to adequately disclose the selected companies, selected transactions (to the extent applicable),

11

and/or a fair summary of the qualitative characteristics of the purportedly "similar" companies and/or transactions.

42.     The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to KLXE shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, KLXE shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining how to vote in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to KLXE shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

43.     The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44.     The Registration Statement provides that, "around March 12, 2020, [Defendant] McCaffrey . . . received an inquiry from the President and CEO of an oilfield services company ("Company B") about exploring possible strategic transactions between Company B and KLXE."

45.     The Registration Statement provides that, "[o]n April 22, 2020, [Defendant] Khoury received a phone call from an asset management firm ("Company C") expressing interest in a potential investment in KLXE, consisting of debt, preferred stock with warrants and cash, subject to due diligence and further discussion."

46.     The Registration Statement, however, fails to adequately disclose, to the extent applicable, the terms and values of any indications of interest and/or proposals between KLXE and Company B, and/or KLXE and Company C.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to KLXE shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

51. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and/or Stock Issuance.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with or consummating the Proposed Transaction and any vote thereof, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

   B.  In the event Defendants complete the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

   C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

   D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 24, 2020          Respectfully submitted,

                  **HALPER SADEH LLP**

                  /s/ Daniel Sadeh
                  Daniel Sadeh, Esq.
                  375 Park Avenue, Suite 2607
                  New York, NY 10152
                  Telephone: (212) 763-0060
                  Facsimile: (646) 776-2600
                  Email: sadeh@halpersadeh.com

                  *Counsel for Plaintiff*